IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JEREMY A. AVERY, SR.                                                                                  PLAINTIFF

v.                                              Civil No. 6:17-CV-06124

CHIEF DEPUTY STEVEN ELROD,                                                                  DEFENDANTS
CAPTAIN RON HALVERSON, APN
EARNEST R. ENNIS, DR. KARL
WAGENHAUSER, SOUTHWEST
CORRECTIONAL MEDICAL GROUP, INC.
and SHERIFF MIKE MCCORMICK

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is a Motion for Summary Judgment by Defendants Elrod, McCormick, and Halverson ("GCDC Staff Defendants").[1]  (ECF Nos. 36, 37, 38).

**I.  BACKGROUND**

Plaintiff filed his Complaint on November 30, 2017.  (ECF No. 1).  He alleges his constitutional rights were violated by the denial of medical care while incarcerated as a pre-trial detainee in the Garland County Detention Center.  (*Id.* at 3-11).  Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Ouachita River Unit.

---

[1] The remaining Defendants, (Ennis, Wagenhauser, and Southwest Correctional Medical Group) ("Medical Defendants") were granted an extension until July 15, 2019, to file their Motion for Summary Judgment.  (ECF No. 45).

1

Plaintiff alleges he has swelling, sores, weeping, and oozing[2] on his feet and legs from an unnamed medical condition. He alleges all Defendants, in their official and personal capacities, ignored his symptoms and delayed his treatment from May 6, 2017, through October 28, 2017. He alleges this resulted in the deterioration of his health and medical condition, which ultimately lead to his hospitalization and to the infliction of pain and suffering, mental and emotional suffering, and a loss of range of motion. As grounds for his official capacity claim, Plaintiff alleges it is the custom of both Garland County deputies and medical staff to ignore valid sick calls and complaints by inmates and detainees. (*Id*. at 9).

Against the GCDC Staff Defendants, Plaintiff alleges denial of medical care, deliberate indifference, ignoring obvious conditions, and interference with access to treatment from May 6, 2017, through October 21, 2017. (*Id.* at 10). Plaintiff proceeds against these Defendants in both their personal and official capacities for this claim. (*Id.*).

Plaintiff alleges these Defendants denied him "proper access" to medical staff or treatment orders and ignored several requests for help "with issues with medical staff." (*Id.*). Plaintiff alleges these Defendants "left me to continue to swell and suffer with sores," ultimately resulting in his hospitalization. He alleges he has lost range of motion and cannot be on his feet for any length of time as a result. (*Id.*). As grounds for his official capacity claim, Plaintiff alleges it is the custom of Detention Center staff "to not take inmates serious and to put issues off on medical staff and not enforce treatment of inmates, which allow's inmates to be medica[l]ly neglected." (*Id.* at 11).

On December 8, 2017, Plaintiff filed a Motion to Substitute Defendant. (ECF No. 6). In his Motion, Plaintiff asks permission to substitute Garland County Sheriff Mike McCormick for

---

[2] None of the medical records submitted by either Plaintiff or Defendants for this Motion reflect that Plaintiff suffered from weeping or oozing sores. Instead, the analysis will focus on Plaintiff's swelling feet and legs alone.

the previously named Garland County Sheriff's Department. Plaintiff alleged Defendant McCormick violated his constitutional rights as follows:

> by allowing or the enforcement of certain policies, procedures, and or customs of the Garland County Detention facility. Which allowed housing deputies and medical staff to inflict wanton pain and suffering as well as inadequate medical attention and medical negligence. Defendant Mike McCormick also has final say of the renewal or termination of employment contracts at the Garland County Detention Center. All final medical procedures and appointments with specialists are approved threw him. Being Sheriff Mr McCormick is wholly responsible for the actions of each and every act of each and every employee, of the Garland County Sheriff's department.

(*Id.* at 2). Defendant McCormick was substituted as a Defendant on March 9, 2018. (ECF No. 9). Pursuant to PLRA screening, Plaintiff' official capacity claim that Defendants McCormick, Elrod, and Halverson customarily failed to override the medical opinions and treatment plans of the medial staff were dismissed. (ECF No. 9 at 4).

The remaining claims against the GCDC Staff Defendants, both personally and as a matter of GCDC custom, are therefore limited to his allegations that Defendants ignored his requests for medical help (including sick calls and medical complaints), denied him access to medical staff for his swollen legs and feet, and failed to override medical staff decisions to prevent medical neglect.

The GCDC Staff Defendants filed their Motion for Summary Judgment on January 24, 2019. (ECF Nos. 36, 37, 38). On January 25, 2019, the Court entered an Order directing Plaintiff to file a Response. (ECF No. 39). Plaintiff filed his Response on February 27, 2019. (ECF No. 42, 43).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

"Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendants argue summary judgment in their favor is appropriate because: (1) Plaintiff cannot demonstrate that his alleged injuries resulted from a policy or custom in place at the Garland County Detention Facility; (2) Plaintiff failed to establish any deliberate indifference to Plaintiff's medical needs and they are therefore entitled to qualified immunity. (ECF No. 37).

In his Response documents, Plaintiff argues he suffered from pain and swelling in his legs which resulted in him being hospitalized on August 9, 2017, and from October 21 through October 27, 2017. (ECF No. 43 at 1). He argues unspecified Defendants cancelled and rescheduled several medical appointments "further Delaying my Serious Medical needs." (*Id*. at 2).

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th

Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not

5

medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Defendants argue Plaintiff's allegations fail to meet either prong of the deliberate indifference standard. They note that the only issue Plaintiff presented to medical staff at any point was dependent edema, or gravity-related swelling in his lower extremities. (ECF No. 37 at 7). Defendants argue this diagnosis does not indicate that Plaintiff had a serious medical need. (*Id*.). They did not, however, provide any affidavits from a qualified medical professional indicating the medical significance of such a diagnosis, and the Court is not qualified to make that determination based on Plaintiff's medical records alone. Therefore, for the purposes of this opinion *only*, the

Court will assume that Plaintiff's dependent edema is an objectively serious medical need which meets the objective first prong of the deliberate indifference standard.

A review of the record, however, indicates Plaintiff's allegations failed to meet the subjective second prong of the standard. A timeline of his care for swelling in his lower extremities, compiled from documents from both Plaintiff and Defendants, is as follows:

- **5/8/2017:** Plaintiff indicates this is his first sick call concerning the swelling in his legs. (ECF No. 42 at 7).

- **5/10/2017:** Plaintiff seen by Defendant Wagenhauser (it appears that an appointment originally scheduled for May 12 for Plaintiff's May 8 sick call was deleted after he was seen on May 10.) (ECF No. 42 at 7).

- **5/15/2017:** Plaintiff submitted a sick call and an appointment was scheduled for that same day. The appointment was rescheduled and then deleted on June 3. (ECF No. 42 at 7-8).

- **6/7/2017:** Plaintiff submitted a sick call and was seen the same day by Defendant Ennis. (ECF No. 42 at 8).

- **6/12/2017:** Appointment to discuss lab results with Defendant Ennis. (ECF No. 42 at 9).

- **6/13/2017:** Plaintiff submitted a sick call and was seen the same day by Defendant Ennis. (ECF No. 42 at 10).

- **6/20/2017:** Plaintiff was seen for a 30-day follow-up appointment. Was started on Depakote. (ECF No. 42 at 10).

- **6/21/2017:** Plaintiff submitted two sick calls and was seen the same day by Defendant Ennis. (ECF No. 42 at 10-11).

- **7/25/2017:** Medical staff note by Defendant Ennis. Noted increased swelling after Plaintiff was prescribed Depakote. Medication changed, labs indicated normal renal function and "BNP." (ECF No. 38-1 at 1).

- **8/8/2017:** Ultrasound report indicates an impression of "Venous thrombosis involving the right distal superficial formal, right popliteal, and right calf veins." (ECF No. 38-2 at 1).

- **8/9/2017:** Plaintiff seen at emergency room of CHI St. Vincent Hospital by Defendant Wagenhauser. Diagnosis was dependent edema. (ECF No. 38-3).

- **8/16/2017:** Plaintiff submitted a sick call and was seen that same day by Defendant Ennis. (ECF No. 42 at 12).

- **8/17/2017:** Plaintiff submitted a sick call stating he was confused about his condition and would like further explanation. Appointment was initially scheduled for that same day, but there was no entry of a completed appointment. (ECF No. 42 at 12-13). Medical note by Ennis stated he saw Plaintiff in clinic on August 17 and saw little to no improvement on edema. Recent venous doppler at CHI was clear; renal function and albumin were good. Ennis ordered additional labs; states possible causes not yet examined are infection/cellulitis and autoimmune. Ennis ordered additional medication. (ECF No. 38-1 at 2).

- **8/21/2017:** Plaintiff filed Grievance #17-08-81 stating his legs continue to swell and he is now experiencing blisters on his legs, feet, and ankles. (ECF No. 38-5 at 1).

- **8/23/2017:** Medical note by Ennis state he saw Plaintiff on August 22 and Plaintiff denied distress or pain. "[R]eview of recent cxr shows enlarged heart although

mobilex interpreted as normal." Plaintiff was to be scheduled for a cardiology consult with Dr. St. John. (ECF No. 38-1 at 3).

- **8/23/2017:** National Park Cardiology examination with Dr. St. John. Assessment was high blood pressure and edema, unspecified. (ECF No. 38-2 at 3). Problem list noted hypertension, cardiomegaly, edema, and dyspnea. (ECF No. 38-4). Impression and plan states: "The patient has been having marked fluid retention since April. He has had multifaceted workup. No evidence of deep vein thrombosis or pulmonary embolism. Some pain. We will plan for echocardiographic study today." (*Id*.).

- **8/25/2017:** Plaintiff filed Grievance #17-08-96, stating he is grieving medical because "my legs and feet are still swelling, the medicine is causing more issues than before." (ECF No. 38-5 at 2).

- **8/31/2017:** Response to Plaintiff's Grievances #17-08-81 and #17-08-96. The response on August 31 by Melissa Jarrett, R.N. stated he was being treated per the on-site provider's recommendations. (ECF No. 38-5 at 1, 2).

- **9/21/2017:** Three requests for an appointment. An appointment for all three was set for September 28. One request was entered on September 21 by a staff member who indicated concern that Plaintiff seemed depressed and "VERY not himself." The notation indicates it was rescheduled. (ECF No. 42 at 13-14).

- **9/26/2017:** Plaintiff submitted a sick call and asked to speak to Defendant Ennis. Appointment set for September 28. This appointment was noted as deleted. (ECF No. 42 at 14-15).

- **9/28/2017:** Plaintiff was seen for a sick call by Burgin. (ECF No. 42 at 13-14).

9

- **10/4/2017:** Plaintiff was seen for an appointment by Gray in the morning and Burgin in the evening. He was referred to Dr. Herr for a consult. (ECF No. 42 at 15-16).

- **10/7/2017:** Plaintiff was treated in p.m. at staff request.

- **10/20/2017:** Appointment deleted. (ECF No. 42 at 17).

- **10/20/2017:** An appointment created on October 19 was deleted because Plaintiff was in the hospital. (ECF No. 42 at 17-18).

- **10/ 21/2017:** Plaintiff submitted an affidavit with his Response stating he was sent to the emergency room of CHI St. Vincent Hospital on October 21, 2017, and was admitted until October 27, 2017. He states the diagnosis at that time was central and peripheral pulmonary edema, and he underwent three medical procedures to correct his feet and legs. (ECF No. 42 at 5).

- **10/25/2017:** Plaintiff submitted a care plan from a physical therapist at the hospital for this date noting impaired mobility and use of a rolling walker. (ECF No. 42 at 20).

- **11/02/2017:** Plaintiff scheduled for an appointment with the Arkansas Renal Group. Question in the notes as to medication dosage.

- **11/16/2017:** Plaintiff appealed Nurse Jarret's response to #17-08-96, stating he was still in pain and swelling. (ECF No. 38-5 at 4).

- **11/11/2017:** Defendant Halverson replied to his appeal stating he is being treated according to a physician's orders, and he could not over-ride those orders. (ECF No. 38-5 at 4).

- **11/27/2017:** Plaintiff appealed this response, stating he was not asking anyone to overrule a doctor. "I am simply asking for proper and adequate medical treatment. I feel that more can be done to treat my conditions. Please help me get treated properly." (ECF No. 38-5 at 5).
- **11/29/2017:** Defendant Elrod wrote Plaintiff a letter in response. He stated he is not qualified to confirm if Plaintiff's treatment is "proper and adequate." Defendant Elrod stated he would forward his grievance to the GCDC Health Services Administrator for further review. Plaintiff was advised to continue to notify medical staff daily of any changes or issues with his medical state so he could be monitored accordingly. (ECF No. 38-5 at 6).
- **11/30/2017:** Plaintiff filed his Complaint in this case.

Plaintiff argues that the GCDC Staff Defendants rescheduled or cancelled his medical appointments, which delayed his medical treatment. (ECF No. 43 at 1). In support, he points to notations of rescheduled or deleted appointments in his patient history. While these notations do exist, Plaintiff's argument is contradicted by the record for two reasons. First, none of the named Defendants entered the notations to reschedule or delete an appointment. Second, it does not appear that any of these notations resulted in Plaintiff's medical care being denied or significantly delayed. Plaintiff filed a sick call on May 8, 2017. The appointment for this sick call was initially set for May 12, 2017, but then rescheduled for May 10, 2017. Plaintiff submitted a sick call on May 15, 2017, and an appointment was initially scheduled for that same day. It was rescheduled and then deleted on June 3, 2017. Plaintiff was then seen on June 7, 2017, on the same day he submitted a sick call. An appointment set for August 17, 2017, did not indicate that it was completed in the patient history. A medical note for that date, however, indicated he was seen that

day and additional labs and medications were ordered. On September 21, 2017, a staff request for Plaintiff to be seen was set for an appointment on September 28. It was noted as rescheduled. On September 26, 2017, Plaintiff submitted a sick call to speak to Ennis, and was scheduled for an appointment on September 28, 2017. This appointment for Ennis was deleted but Plaintiff was seen by Burgin on September 28, 2017. Plaintiff's October 20, 2017, appointments were deleted because he was hospitalized.

Thus, while the record indicates there has been difficulty in identifying the cause of Plaintiff's lower-limb edema, it does not indicate that the GCDC Staff Defendants have been deliberately indifferent to his condition. Rather, the record clearly shows Plaintiff was seen promptly, by either the named Medical Defendants or other medical personnel, after he placed sick calls, most often the same day the request was placed. He was scheduled for follow-up appointments to monitor his condition. In two instances, staff made requests for him to been seen by the medical provider. He was taken for outside specialist consults, including National Park Cardiology Services and the Arkansas Renal Group. The cardiologist noted he had received a "multifaceted workup" to determine the cause of his edema. He was taken to the emergency room when there was concern about the existence of deep vein thrombosis, and he was admitted to the hospital for treatment for several days in October. The Court can discern no denial or delay of medical care in this record by the GCDC Staff Defendants in either their personal or official capacity.

Further, Plaintiff has provided no objective medical evidence indicating that the treatment he has received is inappropriate in any way. That Plaintiff "feel[s] that more could be done" to treat his conditions does not rise to the level of a constitutional violation. *See Nelson,* 603 F.3d at

449) ("[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.").

There is no genuine issue of material fact and the GCDC Staff Defendants are entitled to summary judgment as a matter of law.

## IV.  CONCLUSION

Accordingly, I recommend that the GCDC Staff Defendants' Motion for Summary Judgment (ECF No. 36) be GRANTED and Plaintiff's claims against Defendants Elrod, Halverson, and McCormick be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **27th day of June 2019**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE